```
            UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS

STEPHEN DETAR,
          Plaintiff,
                                  C.A. No.  04-12202-RCL
     v.

INGRED GRIFFITH and
MIDDLESEX COUNTY, ET AL.,
              Defendants
```

MEMORANDUM AND ORDER

For the reasons stated below, this action is dismissed.

BACKGROUND

On October 18, 2004 plaintiff Stephen Detar filed his *pro se* complaint against defendant Ingred Griffiths, a Barbados resident, and Kettlyne Cine, a Jamaican resident. In the caption of his complaint he also names Middlesex County as a defendant.

While not entirely lucid, the crux of the 17 page, 51 paragraph handwritten complaint of the Plaintiff appears to center around his custody dispute with his ex-girlfriend, Ingred Griffiths, as well as his disputes with the Department of Social Services (DSS) and the Probate Court proceedings. He also complains about his son's medical and mental health treatment.

Most of the complaint recounts the history of his relationship with Ingred Griffiths, with whom he claims to

have a son. Initially, there was a dispute between them regarding whether Detar's name would appear on the birth certificate, but ultimately, at Detar's insistence and the help of DSS and Judge Dilday, his name was listed on the birth certificate on August 5, 1998 (Complaint, ¶11). Detar allegs Griffiths used his son to obtain free housing, food stamps, fuel assistance, and to collect SSI disability checks claiming the son was disabled. He also complains that she gets all of the tax benefits as long as she retains custody. (Complaint, ¶13). Detar does not believe his son to be disabled/mentally ill.

At some unspecified time, Detar was criminally charged with hitting an EMT and was tried twice, convicted and sentenced. Later, he was paroled and lived with Griffiths. (Complaint, ¶¶15, 16). Detar claims he wanted to leave that residence and take his son (Tyson) with him. He alleges that once he had full custody of his son but "was blackmailed into giving Ingred Joint custody." (Complaint, ¶16).

Much of the remainder of the complaint addresses Detar's complaints about the treatment of himself and his son by the DSS and the school, as well as complaints about

the medical treatment and diagnosis of his son in connection with his mental health, his treatment at the Cambridge City Hospital, and the medications prescribed to him. Detar claims he complained that he did not want his son sedated and that he wanted his classroom changed. (Complaint, ¶28). He further claims that defendant Kettlyne Cine, a case worker (presumably for the DSS) instructed Griffiths to continue Tyson on the medication, and to ignore Detar and to seek a restraining order against him. It appears Detar went to the Probate Court for help in connection with his claims that his son was being over-medicated. He states he had doctor's report to support his claims, which was confiscated by DSS. He asserts that Kettlyne Cine "wrote a letter the [sic] Probate court judge claiming that I was a violent criminal and had just gotten out of jail and was a violent influence on my son who was in need of serouse [sic] medical attention and that I was neglecting him and that DSS fully supported the restraining orders." (Complaint, ¶34). He later claims that a doctor at Cambridge City Hospital filed a 51A petition and the DSS had taken Detar to court and taken his parental rights. (Complaint, ¶38). Detar claims that on March 18, 2003, defendant Kellyne Cine wrote an

affidavit for an emergency care and protection matter and that Detar moved to restrain Griffiths to stay away from his son. (Complaint, ¶42).

Detar then detours in his narrative and talks about a criminal matter involving tapes of Detar making gun and bomb threats (Complaint, ¶44), time he spent in jail until the case was dismissed, and inability to obtain various discovery.

Detar then states what appears to be his main issues:

> I have certified tapes from the probate court where the judges allowed her [Griffiths] to change and change and change her storey [sic] from each court date to court not to mention the district court clerk magistrait [sic] Moscow who tells me to get lost when I want to take out complaints. (Complaint, ¶48). Chief Justice Bernstein has four motions in front of her 1) Tyson has a right to refuse medication if there is no disability 2) Produce the discharge report from CCH of Tyson Detar where no definate [sic] disabilaty [sic] was found only experiments with medication and slander of father are inacated [sic] 3) Tyson has the right to see DAD And Brothers.  But Bernstein will not rule. I supeade [sic] Tyson to a 2/11/04 court date mom refused to bring him in (Complaint, ¶49).  I'm not convicted of anything and to violate my rights by waiting untill [sic] after some trial that will not happen is sick I'm innocent [sic] untill [sic] proven guilty. (Complaint, ¶50).

Finally, the relief Detar seeks from this Court is as follows:

> I want the US Court to listen to the tapes of contempt (kidnapping) then force the courts to turn over the documents. Make this Moscow stop racateering [sic]. And most importly [sic] have my son Brought to this court and given back to his Dad. Money would be nice.

This Court previously allowed Detar's Application to Proceed without prepayment of fees.

## ANALYSIS

I. <u>The Court May Screen This Action.</u>

This Court may screen the complaint filed by Detar under 28 U.S.C. §1915. Section 1915, authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of the filing fee if the action lacks an arguable basis either in law or in fact, <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting former §1915(d)), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C.

§1915(e)(2).[1]

II.  The Complaint Is Subject to Dismissal

Detar's complaint is subject to dismissal under §1915 because 1) Detar's Complaint fails to comply with Rule 8(a) of the Federal Rules of Civil Procedure; and 2) this Court lacks subject matter jurisdiction over Detar's claims.

   A.  Detar's Complaint is technically deficient.

As an initial, technical matter, Detar's pleadings are deficient.  The Complaint contains numerous bald allegations in a stream-of-consciousness rhetoric, but fails to provide detail specific factual allegations necessary to clearly state his cause or causes of action, in violation of Fed. R. Civ. P. 8(a).  Rule 8(a) requires that a plaintiff include

---

[1] Claims lack an arguable or rational basis in law when they are brought against a defendant who is clearly entitled to immunity or involve the infringement of a legal interest which clearly does not exist.  See Neitzke, 490 U.S. at 327-328 (interpreting the former §1915(d)); accord Denton, 504 U.S. at 32 ("clearly baseless" actions may be dismissed); Mack v. Massachusetts, 204 F. Supp.2d 163, 166 (D. Mass. 2002) (dismissing for lack of subject matter jurisdiction).  Complaints containing claims based on indisputably meritless legal theories or factual allegations that are clearly baseless may be dismissed *sua sponte* and without notice.  Id.; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).  Actions may be screened and dismissed prior to the issuance of summonses.  See Neitzke, 490 U.S. at 324 (review may occur prior to issuance of process to spare prospective defendants the inconvenience and expense of answering defective complaint).

in his complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Here, Detar has failed to provide relevant dates of the alleged occurrences, as well as the names of the individual actors. For example, he asserts that DSS confiscated his doctor's report regarding his son's medical condition. No other factual information is provided. The complaint is replete with such deficiencies, and contains pages of irrelevant and immaterial statements.

However, although this pleading failure poses difficulties, except as otherwise noted, the case shall not be dismissed on these grounds, in light of the other bases for dismissal on the merits, set forth below.

B.  <u>Detar fails to establish a §1983 federal claim</u>.

Although Detar does not expressly invoked a claim under 42 U.S.C. §1983, he has indicated that "money would be nice". Accordingly, it is presumed Detar has a monetary damage component as part of the relief sought. Even if Detar's complaint is generously construed to raise a Fourteenth Amendment due process claim under §1983, such claim is subject to dismissal for failure to state a

cognizable claim, and for suit against defendants who are entitled to absolute or qualified immunity.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. A viable procedural due process claim must demonstrate a "deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' ... without due process of law." Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir. 1996) (internal citations omitted). In order to state a constitutionally cognizable claim under 42 U.S.C. §1983 Detar must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

Here, Detar has failed to meet these elements. He has failed to specify any individuals acting under color of law, who could be held liable. Detar merely names "Middlesex County" as a defendant. Even if it is presumed his real claim is against the judges and judicial officers of the

Probate Court in Middlesex County, such claim is subject to dismissal, because judicial officers are entitled to judicial immunity for their actions taken with the scope of their jurisdiction[2]. See, e.g., Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam) ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damages); Pierson v. Ray, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly); Moore v. Brewster, 96 F.3d 1240, 1244 (9th Cir. 1996) (even where a party alleges that a judge conspired with another party to rule against him, such allegations do not pierce the immunity extended to judges); Allard v. Estes, 292 Mass. 187, 189-190, 197 N.E. 884, 886 (1935) (stating that it is "too well settled to require discussion, that every judge, whether of a higher or lower court, is exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction vested in him by law."). Similarly, to the extent that Detar asserts claims against the Commonwealth of

---

[2] Additionally, to the extent that Detar seeks an injunction to stop Magistrate Moscow from racketeering, the Court deems that this bare assertion, wholly unsupported by any factual allegations whatsoever, amounts to a frivolous claim and will not be considered further in this action.

Massachusetts, its agencies(such as DSS) and/or its courts, those entities are not subject to suit in this Court, under the Eleventh Amendment,[3] and therefore any claims in this regard are subject to dismissal.  <u>Alabama v. Pugh</u>, 438 U.S. 781, 781 (1978) (per curiam) (11th Amendment generally is recognized as a bar to suits against a State, its departments, and agencies unless the State has consented to suit); <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n. 14 (1985) (citing <u>Pugh</u>) (unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it,. . . a State cannot be sued directly in its own name regardless of the relief sought."); <u>cf.</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (neither state nor its officials are "persons" for purposes of §1983); <u>Quern v. Jordan</u>, 440 U.S. 332, 344 (1979) (Congress did not override state's Eleventh Amendment immunity in enacting §1983);

---

[3]The Eleventh Amendment to the United States Constitution provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XIV.

Brown v. Newberger, 291 F.3d 89, 92 (1st Cir. 2002) (there has been no unequivocal abrogation of the Commonwealth's 11th Amendment immunity).

With respect to the DSS worker Kettlyne Cine, Detar has not set forth with any particularity any claims giving rise to a §1983 action. He does allege she instructed Griffiths to continue her son on certain medication, and to ignore Detar and to seek a restraining order against him. He also states that she wrote a letter to the Probate court judge in support of the restraining order, on the grounds that Detar was a violent criminal, neglectful of his son and was a bad influence. However, he does not allege or sufficiently demonstrate that she violated any due process rights. He does not allege that the information provided to the court was intentionally or maliciously false, or that did not comport with state or departmental requirements. See, e.g. Howard v. Malac, 270 F. Supp. 2d 132 (D. Mass. 2003) (§1983 action against social worker;"[t]he right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." citing Watterson v. Page, 987 F.2d 1, 8 (1st Cir.1993)).

Moreover, DSS social workers performing statutorily

11

required functions with respect to child abuse investigation are entitled to assert a qualified immunity defense in §1983 civil rights action by a parent. See <u>Frazier v. Bailey</u>, 957 F.2d 920(1st Cir. 1992); <u>Doe by and through Doe v. Massachusetts Dept. for Social Services</u>, 948 F. Supp. 103 (D. Mass. 1996)(Report of Magistrate Judge Karol)(social worker/ public official performing discretionary functions in exercise of professional judgment are immune from damages under §1983) <u>cf</u>. <u>Brown v. Newberger</u>, 291 F.3d 89 (1st Cir. 2002)(social worker filing report required by law regarding child sexual abuse was not state actor liable under §1983.)[4]

    C.  <u>The Rooker-Feldman Doctrine</u>

To the extent that Detar seeks to have this Court review on the merits the state court decisions with respect to either the custody disputes, the restraining orders, contempt orders or actions, it is well settled that this Court lacks subject-matter jurisdiction. Lower federal courts are without subject-matter jurisdiction to sit in direct review of state court decisions pursuant to the

---

[4] Because Kettlyn would have to assert such a claim as an affirmative defense, the dismissal of these claims is predicated on the pleading deficiency with respect to any claims against her.

Rooker-Feldman[5] doctrine.  See, e.g., Hill v. Town of Conway, 193 F.3d 33, 34 (1st Cir. 1999) (citing Wang v. New Hampshire Bd. of Registration, 55 F.3d 698, 703 (1st Cir. 1995)) (describing Rooker-Feldman doctrine)).  The jurisdiction to review state court decisions lies exclusively with superior state courts and, ultimately, the United State Supreme Court.  See Feldman, 460 U.S. at 482-86; Rooker, 263 U.S. at 415-16.

The Rooker-Feldman doctrine precludes a federal action if the relief requested in that action would effectively reverse a state court decision or void its holding or if the plaintiff's claims are "inextricably intertwined" with the state court's decision.  See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 286 (1983) ("Federal district courts do not have jurisdiction over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.") (internal quotation omitted); accord Johnson v. De Grandy, 512 U.S.

---

[5]The Rooker-Feldman doctrine is a distillation of two Supreme Court decisions: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  See Hill, 193 F.3d at n. 1 (describing history of doctrine).

13

997, 1005-1006 (1994) (<u>Rooker-Feldman</u> doctrine bars "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights); <u>Mandel v. Town of Orleans</u>, 326 F.3d 267, (1st Cir. 2003) (<u>Rooker-Feldman</u> doctrine precludes a lower federal court from entertaining a proceeding to reverse or modify a state-court judgment or decree to which the assailant is a party). Thus, to the extent that Detar seeks a determination that the state court decisions were incorrect or violative of his rights, his claims are subject to dismissal. <u>Hill</u>, 193 F.3d at 34.

   D. <u>Abstention</u>

   To the extent that Detar is complaining about matters in the Probate court which are still pending[6], the Court must abstain from reviewing these claims.

   In <u>Younger v. Harris</u>, 401 U.S. 37 (1971), the Supreme Court held that federal courts are required to abstain from issuing federal court injunctions in situations where, absent bad faith,

---

[6]Detar references various motions pending before the state court.

14

harassment, or a patently invalid state statute, there is a pending state criminal proceeding. Younger, 401 U.S. at 54. The Younger doctrine has been extended to apply to proceedings that are closely related to criminal proceedings, including certain state enforcement and administrative proceedings, as well as custody cases. See, e.g., Huffman v. Pursue, Ltd., 420 U.S. 592, 594 (1975) (nuisance); Juidice v. Vail, 430 U.S. 327, 334-335 (1977) (civil contempt); Trainor v. Hernandez, 431 U.S. 434, 444-447 (1977) (attempt by state to recover fraudulently-obtained welfare benefits); Moore v. Sims, 442 U.S. 415, 423-426 (attempt by state to obtain child custody); Ohio Civil Rights Comm'n. v. Dayton Christian Schs., Inc., 477 U.S. 619, 627-629 (1986) (state administrative proceedings involving important state interests).

### E. Habeas Corpus jurisdiction does not extend to child custody disputes

Although Detar does not expressly seek habeas relief from this Court with respect to his child, this is, in effect, part of the remedy he seeks when he states he wants this Court to "have my son Brought to this court and given back to his Dad". To that extent, this action is subject to dismissal because federal habeas corpus jurisdiction does not extend to state court disputes over child custody. The term "custody" as used in the habeas statutes does not refer

15

to parental custody of a child or custody orders imposed by state courts.[7] Lehman v. Lycoming County Children's Servs., 458 U.S. 502, 514-516 (1982).  A federal habeas petition challenging a state court's child-custody determination impermissibly seeks to re-litigate the petitioner's interest in his parental rights, and federal courts have no jurisdiction in habeas corpus to determine parents' right to custody of their minor children, even if it is alleged that custody was obtained by means that violate the Federal Constitution.  Lehman, 458 U.S. at 515-516; accord Hemon v. Office of Public Guardian, 878 F.2d 13, 14 (1st Cir. 1999) (stating that "it is settled law that federal habeas corpus jurisdiction does not extend to state court disputes over child custody.").  Thus, Detar may not successfully seek habeas relief as a means to obtain custody of his son.  See Lambert v. Pasquotank County Dept. of Social Servs., 46 F.3d

---

[7]Section 2241 of title 28 confers jurisdiction on district courts to issue writs of habeas corpus based on petitions from state or federal prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§2241(a), (c)(3) (emphasis added).  Section 2254 confers jurisdiction on district courts to issue writs "on behalf of a person in custody pursuant to the judgment of a State court. . . on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §2254(a) (emphasis added).

16

1125, 1125 (4th Cir. 1995) (affirming dismissal of petition).

    F.   The Domestic-Relations Exception

To the extent that Detar brings any state-law based claims in his Complaint against his ex-girlfriend Ingred Griffiths with respect to their son, they are subject to dismissal pursuant to the domestic-relations exception. Federal courts have traditionally declined to exercise jurisdiction over matters involving domestic relations such as divorce and custody disputes even though diversity and the jurisdictional amounts are present for purposes of diversity jurisdiction.[8]  Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992) (describing doctrine); accord Elk Grove Unified School Dist. v. Newdow, 124 S. Ct. 2301, 2309 (2004) (citations omitted) (same).  The "domestic relations" exception governs claims over child custody, such as those made by Detar, even where they are cloaked in the "trappings" of another type of claim.  Mandel, 326 F.3d at 271.

Here, the complaint is, *inter alia*, a thinly-veiled attempt to seek relief from this Court concerning Detar's

---

[8] In any event, Detar's pleadings do not indicate there is diversity of citizenship over the defendants.

17

child custody order, and thus Detar's state-law based claims are subject to dismissal.  See, e.g., Congleton v. Holy Cross Child Placement Agency, Inc., 919 F.2d 1077, 1079 (5th Cir. 1990) (affirming dismissal; exception applies if hearing the claim necessitates involvement in domestic issues by requiring inquiry into the marital or parent-child relationship.

## CONCLUSION

ACCORDINGLY, for the foregoing reasons, it is hereby ORDERED that the Plaintiff's complaint shall be dismissed in its entirety, pursuant to 28 U.S.C. §§1915(e)(2), 1915A.

SO ORDERED.


Dated at Boston, Massachusetts, this 22nd day of February, 2005.

                                        /s/Reginald C. Lindsay
                                        REGINALD C. LINDSAY
                                        UNITED STATES DISTRICT JUDGE